# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **THE NATIONAL BASKETBALL ACADEMY, LLC** <br> P.O. Box 42239 <br> Brook Park, OH 44142 <br><br> Plaintiff, <br><br> vs. <br><br> **ERIC LOVE** <br> 4647 Harvest Corner Drive, Apt. 4112 <br> Richmond, TX 77406 <br><br> Defendant. | CASE NO. 1:23-cv-1820 <br><br> JUDGE <br><br> **VERIFIED COMPLAINT FOR A TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, AND DAMAGES** |

Plaintiff The National Basketball Academy, LLC ("TNBA" or "Plaintiff"), states for its Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages against Defendant Eric Love ("Love" or "Defendant") as follows:

1. Plaintiff The National Basketball Academy, LLC is and was at all relevant times hereto, an Ohio limited liability company with its principal place of business in Cleveland, Ohio.

2. TNBA is a professional basketball training and programming organization established in Cleveland, Ohio in 2003. TNBA runs year-round youth basketball programs including camps, clinics, leagues, teams, tournaments, and individual training. TNBA offers its services across the United States, as well as internationally in Oman, Spain, France, Brazil, and Argentina.

3. Defendant Eric Love is, and was at all relevant times hereto, an individual and resident of Texas and may be served with process at 4647 Harvest Corner Drive, Apt. 4112, Richmond, TX 77406, or at any other location where he may lawfully be served.

32518226.5

4. Jurisdiction in this Court is valid pursuant to diversity jurisdiction and the choice of law provisions contained in the Employee Agreement (the "Employee Agreement") and/or the Amended and Restated Operating Agreement of the National Basketball Academy LLC (the "Operating Agreement"). *See* Exhibits 1-2.

5. Venue of this action is proper in this Court pursuant to the choice of law and forum selection provisions in the Employee Agreement and the Operating Agreement. *See* Exhibits 1-2.

6. Love began working with TNBA in 2009.

7. In or around September 2010, TNBA paid for Love to relocate from Cleveland, Ohio to Houston, Texas and promoted him from TNBA's Cleveland West Trainer to the Director of TNBA's Houston, TNBA franchise.

8. As of Love's relocation in September 2010, TNBA had already been operating in the Houston market for four (4) years and secured a contract with the Houston Rockets.

9. At the time, TNBA placed Love in the Director role, and throughout the pendency of Love's employment, TNBA provided Love with a significant amounts of time, energy, and resources to help him develop the Houston, Texas franchise for TNBA.

10. For example, in addition to financial support, TNBA ownership provided Love with a Program Calendar for operations and the necessary tools to develop TNBA's Training, Teams, Camps and Clinics, Leagues and Tournaments.

11. TNBA also used and shared a significant amount of confidential information including business plans and best practices from other TNBA markets and the experience of the TNBA management staff to develop Love's strategy and plan for TNBA's Houston, Texas franchise.

12. On or about January 28, 2019, Love entered into the Employee Agreement with TNBA. *See* Ex. 1.

13. The Employee Agreement is governed by and construed in accordance with the laws of the State of Ohio. *Id*. at Section Q.

14. Under the Employee Agreement, Love assumed full time employment as an agent of TNBA with the understanding that he would "be exposed to certain Trade Secrets and Confidential Information of TNBA." *See* Ex. 1.

15. As an agent of TNBA, Love assumed the following responsibilities:

> **A. AGENT RESPONSIBILITIES.**
>
> 1. AGENT shall administer the Programs so that participants receive a high quality basketball experience in a competitive and supportive environment.
>
> 2. AGENT shall work with TNBA to further develop the Programs and add additional Programs, and will have sole responsibility for the administration of the Programs. AGENT shall not hire or utilize employees, referees, instructors, subcontractors or other individuals ("Assistants") in conjunction with the administration of the Programs, unless such have first been approved by TNBA, in writing.
>
> 3. AGENT, as well as any approved Assistants, shall wear designated attire approved by TNBA when participating in the Programs, and shall not wear attire containing AGENT logos or any other logo not previously approved by TNBA, in writing.

*Id.,* Section A.

16. Love also agreed to be bound by the following restrictive non-solicitation obligations:

> **G. NON-SOLICITATION.** During the Term of AGENT's business relationship with TNBA and for a period of eighteen (18) months immediately following the termination of said relationship, AGENT shall not, either directly or indirectly call on, solicit, or communicate with any of TNBA's current employees, subcontractors, customers or Potential Customers (as defined below,) including, but not limited to, any of TNBA's Facility's or other partnerships for purposes of

offering employment, business, products or services of the type related to the Business of the Company. The Agent shall not be allowed to work for any NBA team employed by TNBA or any other basketball entity that is in competition with TNBA until the 18th month period is over after termination of the relationship

1. "Potential Customer" shall mean any party solicited by TNBA during the one (1) year period prior to the termination of AGENT's business relationship with TNBA.

2. "Business of the Company" shall mean the business in which TNBA is engaged, namely, the promotion, organization and administration of basketball clinics, games, tournaments, leagues, development programs, and all ancillary activities reasonably related thereto.

*Id.*, Section G. The Employment Agreement also contained the following confidentiality requirements:

**H. CONFIDENTIALITY.** During the period of AGENT's business relationship with TNBA, AGENT shall not disclose to anyone outside TNBA or use for AGENT's own benefit or the benefit of others, any Trade Secret or Confidential Information of TNBA, unless such disclosure or use is authorized beforehand by an appropriate written agreement signed by TNBA. Following the termination of AGENT's business relationship with TNBA for any reason, for so long as such information is not generally known to the public, AGENT shall not disclose, directly or indirectly, to anyone outside TNBA, or use for AGENT's own benefit, or the benefit of any third party, any Trade Secret or Confidential Information of TNBA. Upon termination of AGENT's business relationship with TNBA for any reason, AGENT will turn over to TNBA all documents and copies thereof that contain any Trade Secrets or Confidential Information of TNBA and further agrees not to record or regenerate the same from memory in violation of the provisions of this Agreement.

*Id.*, Section H.

17. Love agreed that the non-solicitation and confidentiality restrictions were "reasonably necessary to protect the legitimate interests of TNBA, and said temporal restrictions are not overbroad or unfair." *Id.,* Section U.

18. Over the years, TNBA continued to spend significant amounts of time, energy, and resources to invest in Love's management of its Houston, Texas franchise.

19. In January 2020, Love became a member of TNBA in the role of Vice President of Basketball Operations and Director of Marketing and entered into the Operating Agreement in conjunction with his promotion to Member, Vice President of Basketball Operations, and Director of Marketing of TNBA. *See* Ex. 2.

20. The Operating Agreement is governed by and construed in accordance with the laws of the State of Ohio. *Id.*, Section 13.11.

21. The Operating Agreement contained the following Liability to Members provisions outlining each member's standard of care:

> 5.2 Liability of Members.
>
> (a) To Third Parties. No Member is (i) liable as such for the liabilities of the Company, (ii) liable as such for the liabilities of other Members, or (iii) obligated to restore any deficit balance in his Capital Account. The failure of the Company to observe any formalities or requirements relating to the exercise of its power or management of its business or affairs under this Agreement or the Act is not grounds for imposing personal liability on the Members for liabilities of the Company.
>
> (b) To Other Members. A Member is liable in damages for any action that the Member takes or fails to take as a Member only if it is proved, by clear and convincing evidence, in a court with jurisdiction, that his action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the Company or undertaken with reckless disregard for the best interests of the Company.
>
> (c) Standard of Care. A Member must perform his duties as a Member in good faith, in a manner the Member reasonably believes to be in or not opposed to the best interests of the Company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances.

*Id.*, Section 5.2.

22. The Operating Agreement also contained the following non-competition provision:

> 5.4 Competition and Related Businesses. Until the Company is dissolved, no Member may engage in any business which is

> competitive with the business of the Company. Neither the Company nor any Member has any right by virtue of this Agreement to share or participate in such other business.

*Id.*, Section 5.4.

23. On August 11, 2023, Love unexpectedly resigned his employment with TNBA and withdrew from the membership of TNBA via letter. *See* Exhibits 3, 4, respectively.

24. After Love resigned, TNBA learned that Love had performed and was performing activities in violation of his obligation under the Employment Agreement and Operating Agreement including:

   a. switching TNBA's previously scheduled gym time in at least three facilities in the Houston area, including but not limited to The Zone, to gym time for Love's personal competitive endeavor, Love Basketball Development, LLC ("LBD");

   b. continuing to train TNBA clients for benefit of LBD using said gym time;

   c. contacting at least one set of TNBA Amateur Athletic Union ("AAU") coaches via group text message in an attempt to solicit their departure from TNBA and join LBD;

   d. contacting TNBA coaches in order to solicit their departure from TNBA to join LBD;

   e. using other individuals with information supplied by Love to contact TNBA players and parents in order to solicit their departure from TNBA;

   f. soliciting former TNBA clients to register for his competitive LBD programs and trainings that are identical to those previously offered by TNBA

- 7 -

      g. training TNBA clients and collecting all fees and payments via personal banking applications rather than remitting payment to TNBA despite incurring gym fees and costs using TNBA's company-issued credit card;

      h. failing to deposit at least $77,000 of TNBA revenue into TNBA's bank account from numerous TNBA activities events since roughly March 2023; and

      i. failing to submit any financial reporting, including but not limited to portfolio management accounting and detailed expense reports, to TNBA.

25. After resigning from TNBA, Love began LBD – a competitive business endeavor operating out of Houston, Texas.

26. As of June 1, 2023, LBD is an active corporation with the right to transact business in the State of Texas. *See* Love Basketball Development, LLC Franchise Tax Account Status, Exhibit 5.

27. LBD, just like TNBA, basketball skill development, training, camps, leagues, and tournaments for student athletes. *See* LBD Website, last accessed Sept. 18, 2023, Exhibit 6.

28. Love advertises LBD on his personal social media accounts[1] as well as through LBD's business social media accounts. *See* Eric Love and LBD Facebook Screenshots, last accessed Sept. 18, 2023, Exhibit 7; Eric Love and LBD Instagram Screenshots, last accessed Sept. 18, 2023, Exhibit 8.

29. LBD's AAU[2] season is scheduled to begin its Fall Season with tryouts on September 24, 2023 at The Zone. *See* Exs. 6, 8. Players can currently register for LBD Select. *Id*. This program is almost identical to TNBA's program.

---

[1] Love advertised his resignation from TNBA and previously promoted his TNBA career as well as TNBA events and programs on both social media accounts. *See* Ex. 7.
[2] LBD calls its AAU program "LBD Select." Players from first through eleventh grade are eligible for LBD Select. *See* Ex. 6.

30. LBD's League of Champions, which is open to players from first through eighth grade, is also scheduled to begin its Fall Session on September 24, 2023 and its Winter Session on November 26, 2023. Both Sessions will take place at The Zone and were previously TNBA programs. *See* Ex. 6. Players can currently register for LBD's League of Champions. *Id.*

31. LBD has Skill Development Training sessions scheduled from October 2 – 31, 2023, for which players can currently register. *See* Ex. 6. These training sessions are identical to the sessions offered by TNBA.

32. LBD has numerous Camps scheduled on the following dates: September 29, 2023; November 20 – 22, 2023; December 18 – 22, 2023; December 26 – 29, 2023; and March 11 – 15, 2024. *Id.* Players can currently register for these Camps, some of which are scheduled to take place at The Zone. *Id.* These camps are almost identical to the camps TNBA planned to offer.

33. On or about September 17, 2023, LBD posted its LBD Select 2023-2024 Coaching Lineup (the "Coaching Lineup"). *See* Ex. 7.

34. The Coaching Lineup names Joe Hunt, Donovan Boyd, and Roosevelt Parker, all of whom coached for TNBA in the last year, as current LBD coaches. *Id.*

### FIRST CAUSE OF ACTION
### (Breach of Contract)

35. TNBA incorporates paragraphs 1 through 34 above by reference as if fully rewritten herein.

36. Love entered into a valid and enforceable contract with TNBA by virtue of the Employee Agreement. This agreement contains non-solicitation and confidentiality obligations.

37. Love entered into a valid and enforceable contract with TNBA by virtue of the Operating Agreement. This agreement contains non-compete and fiduciary duty obligations.

38. Love wholly failed to comply with his ongoing obligations under the Employee Agreement by soliciting TNBA players, parents, coaches and clients, and unlawfully utilizing TNBA confidential information and trade secrets.

39. Love has wholly failed to satisfy his ongoing obligations under the Operating Agreement by improperly and unfairly competing with TNBA by training clients using TNBA gym time; failing to remit payments to TNBA; failing to deposit TNBA revenue into TNBA bank accounts; starting a competing business; soliciting TNBA players, parents, coaches and clients; and unlawfully utilizing TNBA confidential information and trade secrets.

40. TNBA has performed all conditions precedent to enforcement of the Employee Agreement and the Operating Agreement, to the extent the same have not been waived.

41. The above-described conduct constitutes a breach of the parties' contracts. As a direct and proximate result of Love's breach, TNBA has suffered irreparable injury for which there is no adequate remedy at law. Accordingly, TNBA is entitled to temporary and preliminary injunctive relief against Love's breach, any monetary damages incurred as a result of the above described breach, and attorney fees and costs as contractually provided and/or in accordance with applicable law.

**SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty and Duty of Loyalty)**

42. TNBA incorporates paragraphs 1 through 41 above by reference as if fully rewritten herein.

43. As an agent and employee of TNBA, Love owed to TNBA fiduciary duties, including but not limited to, loyalty, good faith, trust, candor, and to not usurp corporate opportunities, or divert business to other companies, as well as a fiduciary duty not to use or disclose TNBA's trade secret and/or confidential information.

32518226.5

44. Love's fiduciary duties required him at all times to, among other things, act in TNBA's best interests and maintain the confidentiality of TNBA's proprietary information.

45. Love also owed a fiduciary duty after the termination of his employment not to divulge TNBA's trade secrets and confidential information.

46. Even following his resignation, Love continues to owe a duty to TNBA not to use or disclose its proprietary information.

47. Love breached his fiduciary duties to TNBA by engaging in the conduct described herein, including but not limited to: using and/or inevitably using and/or disclosing TNBA's proprietary information and establishing a company that competes with TNBA and performing activities in direct competition with TNBA and in violation of the Love's obligations in the Operating Agreement as well as applicable law.

48. As a result of Love's conduct, TNBA has suffered irreparable injury for which there is no adequate remedy at law. Accordingly, TNBA is entitled to temporary and preliminary injunctive relief against Love's breaches of fiduciary duty and duty of loyalty, any monetary damages incurred as a result of the above described breach, and attorney fees and costs in accordance with applicable law.

## THIRD CAUSE OF ACTION
### (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836)

49. TNBA incorporates paragraphs 1 through 48 above by reference as if fully rewritten herein.

50. TNBA's confidential information including vendor and customer lists; proprietary or confidential strategies or procedures whether belonging to TNBA or TNBA's customers; pricing information and information contained in internal correspondence; reports; memoranda; and documents provided by TNBA vendors, licensors, and/or customers constitute trade secrets

that relate to products or services used or intended to be used in interstate commerce, in that TNBA uses the confidential information to provide services to clients throughout the United States.

51. TNBA derives independent economic value from its confidential and proprietary information, including contact information, preferences, and other information for its clients, because it is not generally known in the industry, and this information allows it to provide better service to clients than other similar businesses.

52. TNBA has taken measures to keep this information secret, including by requiring employees to agree to confidentiality provisions. TNBA also send Love a letter demanding, among other things, that he cease use or disclosure of confidential information and proprietary information in his possession.

53. Love misappropriated these trade secrets to steal TNBA clients, facility rentals and by utilizing such documents and his knowledge obtained from his employment with and membership of TNBA, and start a competing business.

54. As a result of Love's conduct, TNBA has suffered irreparable injury for which there is no adequate remedy at law. Accordingly, TNBA is entitled to temporary and preliminary injunctive relief against Love's trade secret misappropriation, any monetary damages incurred as a result of the above described breach, and attorney fees and costs in accordance with applicable law.

**FOURTH CAUSE OF ACTION**
**(Misappropriation of Trade Secrets-- Ohio R.C. § 1333.61, *et seq.* )**

55. TNBA incorporates paragraphs 1 through 54 above by reference as if fully rewritten herein.

56. TNBA derives independent economic value from its confidential and proprietary information, including contact information, training plans, league information, contract forms and

other information for its clients because it is not generally known in the industry, and this information allows it to provide better service to clients than other similar businesses.

57. Love had knowledge of confidential information in connection with his employment with and membership in TNBA, Love was aware he was obligated to keep this information confidential and use it only to benefit TNBA.

58. Love misappropriated TNBA's confidential business information by, at minimum, using the confidential business information to compete with TNBA.

59. TNBA has made reasonable efforts to maintain the secrecy of its confidential and proprietary information, including placing restrictions on employees and members like Love prohibiting improper use of such information. Additionally, TNBA sent a letter to Love demanding, among other things, that he cease use or disclosure of confidential and proprietary information in his possession.

60. Upon information and belief, Love continues to utilize the confidential information in furtherance of his wrongful solicitation of TNBA clients.

61. TNBA did not give Love permission to use its confidential business information outside the course of his employee and member relationship with TNBA.

62. TNBA's trade secrets are extremely valuable and cannot be recreated by publicly available information. TNBA spent years and considerable time and money cultivating relationships with clients and developing its business.

63. Disclosure to others or use by Love of TNBA's trade secrets has damaged and continues to damage TNBA.

64. Love has willfully and maliciously misappropriated TNBA's trade secrets

65. Love's willful and malicious misappropriation of TNBA's trade secrets entitles TNBA to exemplary damages.

## FIFTH CAUSE OF ACTION
### (Unfair Competition)

66. TNBA incorporates paragraphs 1 through 65 above by reference as if fully rewritten herein.

67. Love has engaged in common law unfair competition by engaging in activities that are unlawful and unfair as described above.

68. TNBA created its confidential and trade secret information through extensive time, labor, experience, skill, and money.

69. Love undertook such actions with the intent to interfere and disrupt TNBA's business.

70. Love's acts are resulting in a competitive advantage to Love and his company that is being wrongfully appropriated.

71. Love's actions are intentional, taken with malice, and unjustified in law.

72. As a result of Love's conduct, TNBA has suffered irreparable injury for which there is no adequate remedy at law. Accordingly, TNBA is entitled to temporary and preliminary injunctive relief against Love's unfair competition, any monetary damages incurred as a result of the above described breach, and attorney fees and costs in accordance with applicable law.

## SIXTH CAUSE OF ACTION
### (Conversion)

73. TNBA incorporates paragraphs 1 through 72 above by reference as if fully rewritten herein.

74. TNBA owns extensive equipment required to operate its business.

75. As an agent and employee of TNBA, Love had access to TNBA equipment including but not limited to sporting equipment, schedules, documentation, cash boxes, and monetary proceeds.

76. Without authorization, Love assumed and exercised dominion and control over TNBA's equipment and extensive monetary proceeds, to the exclusion of, or inconsistent with, TNBA's rights as the owner.

77. TNBA sought return of the equipment and proceeds in Love's possession.

78. Love refused to return the property.

79. As a result of Love's conduct, TNBA has suffered irreparable injury for which there is no adequate remedy at law. Accordingly, TNBA is entitled to temporary and preliminary injunctive relief against Love's conversion, any monetary damages incurred as a result of the above described breach, and attorney fees and costs in accordance with applicable law.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff TNBA seeks a temporary restraining order and preliminary injunction restraining, enjoining, and prohibiting Defendant Love from:

   a. Working or performing any services for himself in competition with TNBA or performing any services for any competitor of TNBA;

   b. Soliciting, contacting, calling upon, communicating with or attempting to communicate with any TNBA client, prospective client, customer, prospective customer, vendor, marketing partner, or business partner for selling, marketing, or other business purposes for a period of eighteen (18) months from the date of this Court's Order;

   c. Soliciting or being involved in the recruitment or hire of any employee of TNBA for a period of eighteen (18) months from the date of this Court's Order;

   d. Violating the terms and conditions of Love's Agreements with TNBA;

   e. Using, disclosing, or misappropriating at any time in the future, TNBA's confidential, proprietary or trade secret business information or property;

  f. Interfering in any way, with any current contract, client relationship, prospective client relationship, business partner relationship, or marketing partner relationship of TNBA; and

  g. Breaching any fiduciary obligation to TNBA, including, but not limited to, appropriating any business opportunity of TNBA, engaging in deceptive acts or statements with regard to TNBA's abilities, experiences, and personnel, and from otherwise attempting to gain unfair advantage against TNBA.

Additionally, TNBA respectfully requests that the Court enter an Order requiring Love to:

  a. return to TNBA any TNBA physical or electronic documents or property in his possession;

  b. provide TNBA with a full accounting of all costs, expenses, monies paid, monies received by Love on behalf of TNBA as well as all supporting documentation since January 1, 2023;

  c. remove all social media posts and websites promoting LBD;

  d. pay TNBA monetary damages, including, but not limited to, exemplary damages, lost profits, costs associated with Love breaching the Agreements, and all other appropriate damages, as well as all interest, costs and disbursements of this action, including attorneys' fees as contractually agreed upon, pre-judgment and post-judgment interest, and such other and further relief and this Court may deem just and proper.

            Respectfully submitted,

            By: *s/Karina R. Conley*
              Karina R. Conley (0093906)
              Julia G. Ross (0099095)
              **MCDONALD HOPKINS LLC**
              600 Superior Avenue E., Suite 2100
              Cleveland, Ohio 44114
              (216) 348-5400
              (216) 348-5474 – Fax
              kconley@mcdonaldhopkins.com
              jross@mcdonaldhopkins.com

              James J. Boutrous II (MI P53710)
              (To be admitted *Pro Hac Vice*)

32518226.5

        **MCDONALD HOPKINS PLC**
        39533 Woodward Ave., Ste. 318
        Bloomfield Hills, MI 48304
        (248) 220-1354
        jboutrous@mcdonaldhopkins.com

        *Attorneys for Plaintiff The National Basketball Academy, LLC*

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) SS: | VERIFICATION |
| COUNTY OF GEAUGA | ) | |

    Shane Kline-Ruminski, being first duly sworn, states that he is the President of The National Basketball Academy, LLC, in which capacity he has been authorized to verify the foregoing Verified Compliant on behalf of the plaintiff; that he has read the foregoing Verified Complaint; and that the allegations contained therein are true to the best of his knowledge, information and belief, and so far as upon information and belief that he believes this information to be true.

                                                                                    _/s/ Shane Kline-Ruminski_
                                                                                   SHANE KLINE-RUMINSKI

SWORN TO BEFORE ME
and subscribed in my presence
this 19th day of September, 2023

_/s/ Nick D'Abate_
Notary Public of Ohio
My Commission Expires: 2-23-28

                                                                                   [Notary Seal: NICK D'ABATE - NOTARY PUBLIC, COMM EXP: FEB 23 2028, STATE OF OHIO]

32540728.1
32540728.1